THE HONORABLE ROBERT L. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | Case No. 2:17-cv-53-RSL |
| Plaintiff, | OPPOSITION TO MOTION TO REMAND |
| v. | |
| MONSANTO COMPANY, SOLUTIA, INC. and PHARMACIA CORPORATION, and DOES 1 through 100, | NOTE ON MOTION CALENDAR: MARCH 10, 2017 |
| Defendants. | |

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL

## TABLE OF CONTENTS

Page

I.      Introduction ................................................................................................................ 1

II.     Legal Authorities and Argument .............................................................................. 2

        A.      Defendants' Federal Officer Removal Is Proper ............................................... 2

                1.      Old Monsanto Acted Under Federal Officers When Supplying
                        PCBs to Federal Officers, Agencies, and Military Contractors ........... 3

                2.      A Causal Nexus Exists Between Defendants' Conduct Under
                        Color of Federal Office and the State's Claims ............................... 11

                3.      Defendants Assert Colorable Federal Defenses ................................. 14

        B.      The State Pleads a Federal CERCLA Natural Resources Damages
                Claim .................................................................................................... 20

        C.      The Complaint Invokes Federal Enclave Jurisdiction ..................................... 23

III.    Conclusion ............................................................................................................. 24

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - i

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
    304 F. Supp. 2d 404 (E.D.N.Y. 2004) ................................................................ 16

*In re "Agent Orange" Prod. Liab. Litig.*,
    304 F. Supp. 2d 442 (E.D.N.Y. 2004) ........................................................ 3, 8, 17

*Anderson v. Hackett*,
    646 F. Supp. 2d 1041 (S.D. Ill. 2009) ............................................ 8, 10, 14, 18

*Arizona v. Manypenny*,
    451 U.S. 232 (1981) .......................................................................................... 7

*Badilla v. Nat'l Air Cargo, Inc.*,
    No. 12-CV-1066-A, 2014 WL 6390324 (W.D.N.Y. Nov. 17, 2014) ................................ 4

*Bailey v. Monsanto Co.*,
    176 F. Supp. 3d 853 .......................................................................... 3, 9, 10, 11

*Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*,
    285 P.3d 70 (Wash. Ct. App. 2012) .................................................................. 22

*Boyle v. United Techs. Corp.*,
    487 U.S. 500 .......................................................................... 7, 14, 16, 17

*Brennan v. Sw. Airlines Co.*,
    134 F.3d 1405 (9th Cir. 1998), *amended sub nom. Brennan v. Sw.
    Airlines*, 140 F.3d 849 (9th Cir. 1998) .............................................................. 21

*Brown v. Cerro Flow Prods., Inc.*,
    No. 09–582–GPM, 2010 WL 55905 (S.D. Ill. Jan. 4, 2010) ...................................... 8

*Cabalce v. Thomas E. Blanchard & Assoc., Inc.*,
    797 F.3d 720 (9th Cir. 2015)............................................................................ 15

*Campbell v. Brook Trout Coal, LLC*,
    No. 2:07-0651, 2008 WL 4415078 (S.D. W. Va. Sept. 25, 2008) .............................. 5

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992) ........................................................................................ 20

*City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*,
    484 F.3d 380 (6th Cir. 2007).......................................................................... 19

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - ii

*City of Seattle v. Monsanto Co., et al.*,
   Case No. 2-16-cv-107-RSL, Dkt. 60 ......................................................... 2, 21

*Clayton v. Cerro Flow Prods., Inc.*,
   Civil No. 09-550-GPM, 2010 WL 55675 (S.D. Ill. Jan. 4, 2010) ...................... 8

*In re Commonwealth's Motion to Appoint Counsel*,
   790 F.3d 457 (3d Cir. 2015) ................................................................... 2, 9

*Custer v. Cerro Flow Prods., Inc.*,
   No. 09-514-DRH, 2009 WL 5033931 (S.D. Ill. Dec. 15, 2009) ..................... 8, 18

*Degel v. Majestic Mobile Manor, Inc.*,
   914 P.2d 728 (Wash. 1996) ......................................................................... 22

*Durham v. Lockheed Martin Corp.*,
   445 F.3d 1247 (9th Cir. 2006) ......................................................... 2, 3, 23

*Enviro. Transp. Sys. Inc. v. ENSCO, Inc.*,
   736 F. Supp. 384 (C.D. Ill. 1991) ............................................................ 19

*FDA v. Brown & Williams Tobacco Corp.*,
   529 U.S. 120 (2000) ................................................................................ 20

*Fireman's Fund Ins. Co. v. City of Lodi, California*,
   302 F.3d 928 (9th Cir. 2002) .................................................................. 20

*Freightliner Corp. v. Myrick*,
   514 U.S. 280 (1995) ................................................................................ 20

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005) ................................................................................ 21

*Humphries v. Elliot Co.*,
   760 F.3d 414 (5th Cir. 2014) ..................................................................... 4

*Humphries v. OneBeacon Am. Ins. Co.*,
   No. 13-5426, 2014 .................................................................................... 5

*Isaacson v. Dow Chem. Co.*,
   517 F.3d 129 (2d Cir. 2008) ....................................................... 8, 11, 13, 14

*Jefferson Cnty. v. Acker*,
   527 U.S. 423 ............................................................................... 3, 6, 15

*Kelly v. Monsanto Co.*,
   No. 4:15 CV 1825 JMB, 2016 WL 3543050 (E.D. Mo. June 29, 2016) ........... 3, 9, 10, 11

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - iii

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014)..........................................................2, 3, 13, 14, 15, 17, 16

*McKay v. Rockwell Int'l Corp.*,
    704 F.2d 444 (9th Cir. 1983).......................................................................15, 16

*Mobley v. Cerro Flow Prods., Inc.*,
    No. 09–697–GPM, 2010 WL 55906 (S.D. Ill. Jan. 5, 2010) ...............................8

*Morgan v. Great Southern Dredging, Inc.*,
    No. 11-2461, 2012 WL 4564688 (E.D. La. Sept. 30, 2012).................................5

*Murray v. Joe Gerrick & Co.*,
    291 U.S. 315 (1934) ............................................................................23

*Ohio v. Sherwin-Williams Co.*,
    No. 2:08-cv-00079, 2008 WL 4279579 (S.D. Ohio Sept. 17, 2008) ...................5

*Rollins Env. Svcs. v. St. James Parish*,
    775 F.2d 627 (5th Cir. 1985)...................................................................19

*Ryan v. Dow Chemical Co.*,
    781 F. Supp. 934 (E.D.N.Y. 1992) ........................................................7, 8

*TCI, Inc. v. Town of Ghent*,
    165 A.D.2d 307 (N.Y.A.D. 1991)............................................................19

*Twitty v. North Carolina*,
    527 F. Supp. 878 (E.D.N.C. 1981)...........................................................19

*Warren County v. State of N.C.*,
    528 F. Supp. 276 (D. N.C. 1981) .............................................................19

*Watson v. Phillip Morris Cos., Inc.*,
    551 U.S. 142 (2007)..........................................................................2, 7

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ...........................................................2, 5, 14, 17

*Winters v. Diamond Shamrock Chem. Co.*,
    149 F.3d 387 (5th Cir. 1998)..................................................................5, 8

**Statutes**

15 U.S.C. §§ 2601(c), 2605(a), 2605(c)(1)(D) ..............................................18

15 U.S.C. § 2605(e)(2)(A) ......................................................................20

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - iv

21 U.S.C. § 4557 ............................................................................................. 18

28 U.S.C. ...................................................................................................... 23

28 U.S.C. § 1331 ...................................................................................... 20, 24

28 U.S.C. § 1367 ...................................................................................... 10, 23

28 U.S.C. § 1441 ............................................................................................. 24

28 U.S.C. § 1442 ............................................................................................. 24

28 U.S.C. § 1442(a)(1) ..................................................................... 1, 2, 9, 14

42 U.S.C. § 9607(a)(4)(C) .......................................................................... 21, 22

42 U.S.C. § 9607(f)(1) ................................................................................ 21, 22

50 U.S.C. § 4513 .............................................................................................. 7

Defense Production Act of 1950 Section 101 ........................................... 6, 18

Comprehensive Environmental Response, Compensation, and Liability Act of
    1980 ................................................................................................... 19–22

Toxic Substances Control Act, 15 U.S.C. § 2617 ........................................ 18

Wash. Rev. Code § 4.24.630(1) ..................................................................... 22

Wash. Rev. Code § 7.48.130 .......................................................................... 22

Wash. Rev. Code § 7.72.030 .......................................................................... 22

**Other Authorities**

United States Constitution, Article I, Section 8, Clause 17 ......................... 23

47 Fed. Reg. 37,342, 37,342 (Aug. 25, 1982) ............................................. 18

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## I.     Introduction

This Court has three independent bases for jurisdiction and remand should be denied.

*First*, this case was properly removed under the broad, liberally-construed federal officer removal statute, 28 U.S.C. § 1442(a)(1).  Old Monsanto acted under color of federal officers when manufacturing and supplying PCBs to help the federal government carry out multiple wars.  There is a nexus between the State's claims and Old Monsanto's compliance with government demands to provide the military with PCBs at its facilities on the same bodies of water that the State now alleges are contaminated with PCBs.  Having supplied PCBs to the military to conduct a war, the government contractor defense and federal preemption preclude imposition of liability on Defendants for that conduct.  The State argues these defenses are not meritorious, but to obtain remand, it must show that these federal defenses are not even "colorable," a standard that it does not seriously address and cannot meet.

*Second*, the State's claims for natural resource damages are thinly-veiled CERCLA claims that can be easily unmasked to confer federal question jurisdiction.  "Natural resource damages" actions can only be brought by designated "natural resource damages trustees," such as states, under CERCLA.  "Natural resource damages" is a statutory term of art expressly included within CERCLA's thoughtful framework for the cleanup of contaminated sites, and it does not appear in *any* of the state-law statutes pleaded in the State's complaint.

*Third*, the State's Complaint concerns alleged PCB water contamination from activities on federal enclaves identified by Defendants, for which there is exclusive federal jurisdiction.  The State offers no evidence to support its speculation that the allegedly contaminated water bodies on federal enclaves are not the areas "most affected" by PCBs, nor any reason why that speculation, if true, would deprive this Court of jurisdiction to the extent that the State's claims concern federal enclaves.

This lawsuit by the State of Washington is exactly the type of action for which

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 1

1  Congress has elected to provide a federal forum, given the federal issues raised regarding
2  military contracts, CERCLA remediation, and federal lands.   Nine other cases alleging
3  identical conduct are all pending in federal district courts, including the *City of Spokane* case
4  in the Eastern District of Washington and the *City of Seattle* case, which is before this Court.
5  In fact, this case, *City of Spokane*, and *City of Seattle* are litigating overlapping claims
6  regarding the same water bodies (*i.e.*, the Duwamish and Spokane Rivers).   The State's
7  contention that it can file an action raising the same issues and yet escape federal jurisdiction
8  is without merit.  The motion to remand should be denied.

9                                    **II.**

10          **III.         Legal Authorities and Argument**

11      **A.      Defendants' Federal Officer Removal Is Proper**

12          The federal officer removal statute is "broad, and the statute must be liberally
13  construed." *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007).   As the Ninth
14  Circuit has recently held—and the State ignores—"defendants enjoy much broader removal
15  rights under the federal officer statute than they do under the general removal statute." *Leite*
16  *v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) (citing *Durham v. Lockheed Martin*
17  *Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006)).   The State also fails to acknowledge the 2011
18  amendments to the federal officer removal statute, which were "intended to broaden the
19  universe of acts that enable Federal officers to remove to Federal court."   *In re*
20  *Commonwealth's Motion to Appoint Counsel*, 790 F.3d 457, 467 (3d Cir. 2015) (citing
21  legislative history).

22          The Supreme Court and the Ninth Circuit have rejected the argument, advanced by
23  the State here, that Defendants must <u>prove</u> their federal defense before they have an
24  opportunity to litigate in the federal forum.   A "defendant invoking § 1442(a)(1) 'need not
25  win his case before he can have it removed.'" *Leite*, 749 F.3d at 1124 (quoting *Willingham*
26  *v. Morgan*, 395 U.S. 402, 407 (1969)).   Rather, Defendants need only establish that the

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

federal defense is "colorable." *Id.* "In deciding whether a defendant has such a defense, courts reject a 'narrow, grudging interpretation;' they do not require that the defense is likely to be successful on the merits." *In re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 449 (E.D.N.Y. 2004) (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431).

The minimal burden for removal under the federal officer statute requires Defendants to show (1) that they are a "person" within the meaning of the statute; (2) that Old Monsanto's actions were taken while acting under a federal officer and with a causal nexus to the State's claims; and (3) that a colorable federal defense is presented. *Leite*, 749 F.3d at 1120 (quoting *Durham*, 445 F.3d at 1251). The State does not dispute that Defendants are persons. Only the latter two prongs are contested.

### 1. Old Monsanto Acted Under Federal Officers When Supplying PCBs to Federal Officers, Agencies, and Military Contractors

The authorities affirmatively cited by the State establish that Old Monsanto satisfied the "acting under" requirement "with respect to the PCBs that Old Monsanto sold directly to the government, or to others at the direction of the government." *See Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 870 (on appeal); *see also Kelly v. Monsanto Co.*, No. 4:15 CV 1825 JMB, 2016 WL 3543050, at *9 (E.D. Mo. June 29, 2016) (on appeal) ("Like the *Bailey* court, this Court concludes that . . . Defendants have met the 'acting under' requirement for federal officer removal only as to the PCBs that Old Monsanto sold directly to the government, or to others at the direction of the government."). The State fails to explain why its own authorities should not control the "acting under" analysis to establish federal officer removal here.[1]

---

[1] After finding the "acting under" requirement was met, the *Bailey* and *Kelly* courts nevertheless remanded on the ground that the plaintiffs' claims lacked a sufficient nexus to PCBs Old Monsanto manufactured while acting under federal officers. For reasons Defendants address in Section II(A)(2), *infra*, Defendants satisfy the nexus requirement here and *Bailey* and *Kelly* are easily distinguishable on that point.

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1     *Defendants Sold PCBs Directly to the Federal Government*

2         Defendants' notice of removal proffered samples of invoices—a quintessential

3     contract for sale—for direct PCB sales to the Army, Navy, Air Force, Department of

4     Agriculture, Government Printing Office, Council on National Defense, Office of Production

5     Management, Department of Commerce, National Aeronautics and Space Administration

6     ("NASA"), and the Atomic Energy Commission ("USAEC").   *See* Notice of Removal,

7     Dkt. 1, Ex. 22.

8         While those exhibits were representative rather than exhaustive, *see* Notice of

9     Removal, ¶ 12, Defendants have additional exemplar evidence of direct sales to multiple

10    branches of the Armed Forces and military contractors <u>within</u> the State of Washington.  Sales

11    records from 1959 to 1971 show that Old Monsanto sold PCB-containing Aroclor Pyranol

12    GE 1467, Aroclor Pyranol 1470, Transformer Inerteen PPO, Transformer Pyranol A13B3B,

13    and Pydraul F-9 to the "US Navy Bremerton Wash," "Boeing Airplane Co Seattle," "US

14    Naval Air St Seattle," "US Navy Bremerton Wash," "Naval Air Sta[tion] Oak Harbor," "ITT

15    Fed Support Richland WA," "Navy Supply Seattle," and "General Services Adm[inistration]

16    Richland WA."   Ex. 1 to the Declaration of Robert Kaley ("Kaley Decl.").   These are

17    extensive, direct sales that implicate water bodies the State alleges are contaminated with

18    PCBs, and more than satisfy the "acting under" requirement for removal.

19        *The Federal Officer Removal Statute Applies to Subcontractors*

20        In addition to those direct sales and contracts, however, Defendants also are entitled

21    to the benefits of the federal officer removal statute for conduct performed as a

22    subcontractor, which includes an extensive history of PCB sales to military contractors who,

23    like Old Monsanto, were helping the government in national defense and in conducting wars.

24    Courts have repeatedly held that federal subcontractors can act under the color of federal

25    office and may invoke the federal officer removal statute just like direct federal contractors.[2]

26    _____

[2] *See, e.g., Humphries v. Elliot Co.*, 760 F.3d 414 (5th Cir. 2014) (defense subcontractor did

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1     Against the weight of authority, the State cites *Morgan v. Great Southern Dredging,*

2   *Inc.*, No. 11-2461, 2012 WL 4564688, at *1 (E.D. La. Sept. 30, 2012) to argue that

3   subcontractors cannot remove under the federal officer removal statute.  But as noted by a

4   subsequent decision of the Eastern District of Louisiana, *Morgan* relied in error on *Winters v.*

5   *Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998), in support of that proposition.

6   *See Humphries v. OneBeacon Am. Ins. Co.*, No. 13-5426, 2014 LEXIS 133465 (E.D. La.

7   Sept. 23, 2014) (subcontractor acted under color of federal office and was entitled to remove

8   case to federal court).[3]  In the absence of binding authority from the Ninth Circuit holding

9   that subcontractors are not entitled to invoke federal officer removal, the Court should follow

10  the majority rule and find that federal officer removal applies to subcontractors.

11              *Defendants Manufactured and Supplied PCBs at the Direction of Federal Officers*

12            The State also claims that Defendants' Notice of Removal failed to demonstrate that

13  PCBs were manufactured under "direction" from any federal officer.  *See* Motion at 6:19-20.

14  The State's claim is demonstrably false.   Old Monsanto manufactured and sold PCBs

15  pursuant to orders from federal officers and military contractors (including Washington-

16  based Boeing Company) over many decades.   PCBs and their production were deemed

17  "necessary to the national defense," and PCBs were provided to the government and its

18  _____

19  not waive right to invoke federal officer removal statute after primary contractor dismissed);
    *Badilla v. Nat'l Air Cargo, Inc.*, No. 12-CV-1066-A, 2014 WL 6390324, at *2, 7 (W.D.N.Y.
20  Nov. 17, 2014) (defendant acted under color of federal office, even though it "did not have a
    contract directly with the United States," but instead "was providing services . . . pursuant to
21  a subcontract . . . ."); *Campbell v. Brook Trout Coal, LLC*, No. 2:07-0651, 2008 WL
    4415078, at *1 (S.D. W. Va. Sept. 25, 2008) (subcontractor acted under color of federal
22  office).

23  [3] The State's only other citation on this point is to *Ohio v. Sherwin-Williams Co.*, No. 2:08-
    cv-00079, 2008 WL 4279579 (S.D. Ohio Sept. 17, 2008), which is also misplaced.  There,
24  the court concluded the defendant did not "establish separately that [it] assisted or helped the
    federal government" as required.  *Id.*  Here, Defendants provided ample evidence that Old
25  Monsanto directly assisted the government by expanding its plant to produce more PCBs,
    and by continuing to manufacture PCBs for the government under threat of criminal
26  sanctions during wartime for applications that it had voluntarily ceased due to environmental
    concerns.  Notice of Removal, Dkt. 1, ¶¶ 9, 17, Exs. 6–12.

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 5

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1   Washington-based contractors and military installations to help carry out multiple wars.

2   Kaley Decl., Ex. 1; Notice of Removal, Ex. 7 at 1376.  For example:

3       • On November 11, 1972, a federal officer from the Department of Commerce
4         wrote to Monsanto and stated: "You are hereby **directed** to accept Emerson and
          Cuming, Inc. purchase order" for "Aroclor 1242," and that "[t]his action is taken
5         pursuant to Section 101 of the Defense Production Act of 1950."  *See* Notice of
          Removal, Dkt. 1, Ex. 16 (emphasis added).  Old Monsanto objected due to
6         environmental concerns, but complied with the federal government's directive.
          Notice of Removal, Ex. 17. [4]
7
8       • April 25, 1973 correspondence from Raytheon to Monsanto states that Raytheon
          departed from its normal course of business "only to obtain your agreement to
9         promptly ship Aroclor 1242 and because the government has **directed** us to
          proceed to manufacture missiles but has refused to authorize Raytheon to qualify
10        a new potting material which would avoid use of Aroclor 1242," and that
          "Monsanto in all of our dealings has expressed a strong preference not to sell this
11        product to us and is proceeding with the sale **only at the direction of the**
          **government**[.]"  Notice of Removal, Ex. 4. (emphasis added).
12

13      Moreover, as set forth in Defendants' Notice of Removal, when produced for the

14  military, PCBs were subject to specifications dictated by and approved for particular uses by

15  the federal government. [5]

16      In dismissing this evidence, the State urges the Court to apply the type of "narrow,

17  grudging interpretation" that the Supreme Court has expressly instructed courts to avoid

18  when interpreting the federal officer removal statute. *Jefferson Cnty. v. Acker*, 527 U.S. 423,

19

20  [4] Monsanto stated in response: "As you are aware, because of the increasing environmental
    concerns expressed about products containing polychlorinated biphenyls (PCBs), Monsanto
21  Company no longer sells Aroclor 1242 for the uses which we understand Emerson and
    Cuming, Inc. intend for the Aroclor 1242 we have been directed to deliver.  This
22  discontinuation of sales for this type of application is part of a policy voluntarily established
    by Monsanto and which has had the approval of various branches of the United States
23  Government, including the U.S. Department of Commerce."  Notice of Removal, Ex. 17.

24  [5] *See, e.g.*, Notice of Removal, Dkt. 1, Ex. 2 (government specification approving use of
    Aroclor 1254 in heat-resistant paint); Ex. 3 (invoice for shipment of Therminol FR-1 to
25  Loring Air Force Base, "Certified for National Defense under DMS Reg DOC9e"); Ex. 4
    (government-specified use of Aroclor 1242 in potting material for missiles); Ex. 5 (invoices
26  specifying purchase of Pydraul #150 for use as lubricant, Inerteen for use in transformers,
    and Pyranol for use in transformers).

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 6

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1   431 (1999); *Watson*, 551 U.S. at 147 ("the statute must be liberally construed").[6]

2   The State also dismisses the valuable role private firms play when responding to

3   commands from federal officers to assist in the national defense during times of war, but this

4   is contrary to the holdings of the Supreme Court. "[T]he private contractor in such cases is

5   helping the government to produce an item that it needs." *See Watson*, 551 U.S. at 153.

6   Indeed, areas of "'uniquely federal' interest" include "civil liabilities" arising from "federal

7   procurement contracts." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 505–06. Had Old

8   Monsanto failed to comply with directives issued under the Defense Production Act, it would

9   have been subjected to criminal sanctions by statute. 50 U.S.C. § 4513. Answering the

10  government's urgent call should not now be held against Old Monsanto. This exemplifies

11  why a federal forum is necessary to protect uniquely federal interests from prosecution by the

12  State in its own sovereign tribunal. *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)

13  (removal permits trial to occur free from "local interests or prejudice").

14  *The State Relies on Abrogated and Inapposite Authorities*

15  **1.   *Ryan v. Dow Chemical*—**The State places heavy emphasis on a now-

16  disapproved opinion, *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934 (E.D.N.Y. 1992). *See*

17  Motion at 11:6–18. In *Ryan*, Judge Weinstein granted remand after finding that Dow

18  Chemical was not acting under color of federal office when supplying the government with

19  Agent Orange during the Vietnam War. *Ryan*, at 950. However, the State fails to note that,

20

21  [6] The State attempts to analogize this case to *Watson*, where the Supreme Court held that Phillip Morris did not satisfy the "acting under" requirement when it complied with

22  government regulations for testing cigarettes. *Id.* at 157. But Defendants do not contend that removal is proper simply because PCBs were highly regulated. Rather, removal is proper

23  because Old Monsanto had a special relationship with the government and "fulfilled the terms of a contractual agreement by providing the government with a product that it used to

24  help conduct a war." *Id.* at 153–54; *see* Notice of Removal, Exs. 3–5 & 22 (contracts for sale); Kaley Decl., Ex. 1 (sales to the military in Washington). Conducting a war is a "basic

25  governmental task," and Old Monsanto provided PCBs to help carry out multiple wars—"a job that, in the absence of a contract with a private firm, the Government itself would have

26  had to perform" due to the unique, militarily advantageous properties of PCBs. *Watson*, 511 U.S. at 154.

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 7

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

in 2004, when considering "virtually identical circumstances," *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 134-35 (2d Cir. 2008), Judge Weinstein denied remand, holding that "[t]he *Ryan* decision is no longer persuasive," and "was 'not legally capable of appellate review.'" *In re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 445 (E.D.N.Y. 2004) (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 392 (5th Cir. 1998)).[7]

    **2.**    **District Court PCB Orders**—The State also relies on seven district court orders remanding cases removed by Monsanto which, for many reasons, are irrelevant to the facts presented here and do not merit the Court's adoption.

    *First*, although the State's brief gives the impression that these decisions constitute a general rule, it fails to note that five of the orders came from a single district court—the Southern District of Illinois—with three decisions (*Mobley*, *Brown*, and *Clayton*) issued by one district judge on two consecutive days. More importantly, all five of the orders involved facts much different than here. To begin with, the five cases involved the *disposal* of PCBs,[8] while here, the State expressly frames its Complaint in the broadest terms around the pre-1979 *manufacture* of PCBs.[9] This distinction is critical to federal officer removal, as the federal government expanded and directed Old Monsanto's manufacture of PCBs. The State's attempt to hold the original manufacturer's successor liable for PCB manufacturing

---

[7] As Judge Weinstein correctly found in 2004, the "acting under color of federal office" requirement "should not be frustrated by a 'narrow' construction. Courts interpret the rule broadly to achieve the protective purpose of the statute." *Id.* at 447.

[8] *See Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1054 (S.D. Ill. 2009) ("the Monsanto Defendants are not being sued for producing PCBs, but for mishandling PCBs"); *Custer v. Cerro Flow Prods., Inc.*, No. 09-514-DRH, 2009 WL 5033931, at *7 (S.D. Ill. Dec. 15, 2009) (same); *Mobley v. Cerro Flow Prods., Inc.*, No. 09–697–GPM, 2010 WL 55906, at *1 (S.D. Ill. Jan. 5, 2010) (Plaintiffs "seek damages . . . due to allegedly improper disposal of toxic chemicals"); *Brown v. Cerro Flow Prods., Inc.*, No. 09–582–GPM, 2010 WL 55905, at *1 (S.D. Ill. Jan. 4, 2010) (same); *Clayton v. Cerro Flow Prods., Inc.*, Civil No. 09-550-GPM, 2010 WL 55675, at *1 (S.D. Ill. Jan. 4, 2010) (same).

[9] *See, e.g.*, Compl. ¶ 85 ("Monsanto manufactured . . . PCBs in a manner that created or participated in creating a public nuisance"); ¶ 129 (Defendants allegedly are negligent because "a reasonably careful company would not continue to manufacture PCBs . . . ."); Notice of Removal, Exs. 4, 16-17.

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 8

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

thus falls directly within the federal officer removal doctrine, even if more limited claims confined to particular instances of PCB "disposal" might not.  Moreover, in all five cases, the evidentiary record differed markedly from that here.[10]  Finally, all five of those cases were decided before 2011, when the federal officer removal statute was amended to add the words "or relating to" to allow removal under the statute by "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official capacity for **or relating to** any act under color of such office."  28 U.S.C. § 1442(a)(1) (emphasis added).  The addition of the words, "or relating to," was "intended to broaden the universe of acts that enable Federal officers to remove to Federal court."  *In re Commonwealth's Motion*, 790 F.3d at 467.

        *Second*, the other two district court cases cited, *Bailey* and *Kelly*, are both on appeal.  There, the plaintiffs alleged that "the PCBs Monsanto manufactured for the government were only for use in 'closed electrical settings,'" while their claims against Monsanto expressly exempted those closed applications and only "attack[ed] Monsanto's supply of PCBs for use in non-closed applications[.]"  *Bailey*, 176 F. Supp. 3d at 862.  Based on this limitation, the *Bailey* and *Kelly* plaintiffs argued that their claims did not involve any PCBs manufactured and supplied at the federal government's behest.  The opposite is true here: the State's claim is not limited, but rather concerns *any* PCBs present in Washington water bodies without regard to source.  As a result, the State's claims necessarily include any PCB contamination resulting from Old Monsanto's provision of PCBs to Washington-based military installations and contractors prior to 1979, including for uses directed by the federal government.  Indeed, Defendants have already shown that alleged PCB contamination from such closed

---

[10] The record did not contain contracts for direct sales to agencies of the federal government (Notice of Removal, Dkt. 1, Exs. 5 & 22), commandments from the Department of Commerce to ship PCBs pursuant to the Defense Production Act (Exs. 16–19), Necessity Certificates for expansions of facilities that were "100%" for "Defense Purposes" (Exs. 6–8, 10 & 11), commendations the military bestowed on Monsanto for its assistance in carrying out World War II (Ex. 9), or the "Sales Summary" documents showing direct sales to the US Navy in the State of Washington (Kaley Decl., Ex. 1).

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 9

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

applications is at issue, because a transformer laden with PCB coolant "destined for Alaska in conjunction with the construction of an Air Force Radar Station" "was dropped [by GSA] while being loaded onto a commercial barge resulting in 265 gallons of [PCBs] being spilled into the Duwamish waterway." Notice of Removal, Ex. 12 at 180.

*Finally*, in *Bailey* and *Kelly*, the plaintiffs supported their motion to remand with affirmative expert evidence that only a small percentage of PCB sales at issue were made to the government. *Bailey*, 176 F. Supp. 3d at 863. Defendants contend that the proportion of PCBs at issue that were sold to the government is irrelevant, since, as the State's authorities recognize, federal officer removal "authorizes removal of an entire case, even though only one of its controversies might involve a federal officer or agency." *Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1051 (S.D. Ill. 2009) (citing *N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, 719 F. Supp 325, 334 (D.N.J. 1989); 14C Wright, Miller, Cooper & Steinman, Federal Practice & Procedure § 3727).[11] And, in any event, the State has offered no such expert evidence here. Instead, the State relies on an unverified and unscientific calculation of how many pounds of PCBs were sold to the government directly, and then it compares that to an estimate for <u>nationwide</u> PCB sales from the plaintiffs' expert in *Bailey*.

This estimate is not a substitute for the State's lack of evidence. Among other things, nationwide sales are irrelevant to the State's Complaint, which purports to be confined to Washington's geographical borders. The State lacks data establishing what amount of PCBs were sold at the retail level in the State of Washington. Even worse, in referring only to "14,235 pounds of PCB-containing products" ostensibly ordered by the federal government, the State conveniently omits the 600,000 pounds *per month* that the federal government funded through Necessity Certificates during the Second World War, "100%" of which were for "Defense Purposes." *See* Notice of Removal, Ex. 10 at 1394, Ex. 11 at 1404.[12]

---

[11] The Court has supplemental jurisdiction over claims related to PCB sales made to entities other than the federal government and its military contractors. 28 U.S.C. § 1367.

[12] Without delving too deep into this speculative exercise, using the approximately four years

## 2.   A Causal Nexus Exists Between Defendants' Conduct Under Color of Federal Office and the State's Claims

Defendants easily satisfy the "causal nexus" requirement for federal officer removal.[13]   Contrary to the State's arguments, "[t]he hurdle erected by this requirement is quite low, as '[t]he statute does not require that the prosecution be for the very acts which the officer admits to have been done by him under federal authority.'"  *Isaacson*, 517 F.3d at 137 (quoting *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926)).   While Defendants need only show that the State's claims are "for or relating to" acts performed under color of federal office, a direct causal nexus is obvious here because Defendants have shown direct sales of PCBs manufactured under color of federal office into the State of Washington, and the release by third parties of those PCBs into water bodies at issue.

Thus, the State's claims are "for" the very acts Old Monsanto performed under color of federal office.  And they clearly "relate to" those acts due to the State's sprawling theory of liability.   The State contends that Old Monsanto breached state tort law duties by manufacturing PCBs for any and all uses through 1979.  *See* Compl. ¶ 85 ("Monsanto manufactured . . . PCBs in a manner that created or participated in creating a public nuisance"); ¶ 129 (Defendants allegedly are negligent because "a reasonably careful company would not continue to manufacture PCBs . . . .").  And that is what Old Monsanto did for the federal government and its officers—it manufactured and supplied PCBs to Washington-based military facilities where releases to water bodies at issue occurred.  There

---

between July 1941 and the armistice of August 14, 1945, the State might have miscalculated dramatically.  And that is from one facility in four of the 44 years at issue in the Complaint. Notably, in *Bailey* and *Kelly*, the defendants "did not challenge the one hundredth of one percent figure presented by Plaintiffs." *Bailey*, 176 F. Supp. 3d at 863.  Needless to say, while the State has not adduced any evidence to support an "infinitesimal" or "*de minimis*" argument (not to mention that no court in the country other than the *Bailey* and *Kelly* courts have accepted such an argument), Defendants dispute the State's speculative calculations.

[13] By acknowledging a causal nexus between Old Monsanto's conduct under federal officers and the conduct alleged in the Complaint, Defendants do not admit a causal nexus exists between the conduct alleged in the Complaint and the State's alleged harm.

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 11

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

is a nexus between the State's theory and Old Monsanto's conduct under color of federal officer.

Moreover, because the State seeks recovery with regard to all PCBs in Washington's waters, its claims necessarily embrace PCBs sold by Old Monsanto to the government. Defendants have *direct* evidence to satisfy this element because, as discussed above, in 1974 a large government-owned transformer destined for an Air Force facility was dropped during transport by the General Services Administration, resulting in a massive spill of 1,000 kg of PCBs into the Duwamish River, one of the water bodies at issue.  Notice of Removal, Ex. 12.

In addition, Naval Base Kitsap, in Bremerton, Washington, "serves as the host command for the Navy's fleet throughout the Pacific Northwest," and operates on numerous water bodies allegedly contaminated by PCBs, including Sinclair Inlet, Port Orchard, Elliot Bay, and Commencement Bay.[14]  Defendants have adduced evidence of direct sales from Old Monsanto to the Navy in Bremerton, Washington.  *See* Kaley Decl., Ex. 1.  To the extent PCBs manufactured by Old Monsanto are alleged to impair these water bodies, it is inconceivable that they do not arise from Old Monsanto's acts taken under color of federal office.  *See* Kaley Decl., Ex. 1 (sales records showing direct sales of PCB-containing products to, *inter alia*, the "US Navy Dept Bremerton," home of Naval Base Kitsap, "General Services Adm[inistration] Richland WA," which sits on the Columbia River, and "Naval Air Sta[tion] Oak Harbor," which lies on the Strait of Juan de Fuca).

The causal connection stems from the State's own dubious allegations: its vast theory of liability that purports to link every PCB molecule produced over 40 years to Old Monsanto as the allegedly sole domestic manufacturer of PCBs means that PCBs supplied to

---

[14] See Commander, Navy Installations Command, "Naval Base Kitsap," http://www.cnic.navy.mil/regions/cnrnw/installations/navbase_kitsap.html (last visited December 19, 2016) (noting that Naval Base Kitsap "encompasses more than 10,000 acres supporting nearly 70 tenant commands," and its website includes U.S. Navy photo by Petty Officer 2nd Class entitled, "USS Nimitz (CVN 68) transits Sinclair Inlet, Port Orchard, Wash., as it returns to its homeport, Naval Base Kitsap (NBK) – Bremerton Dec. 15"); see also Compl. ¶ 6(a).

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 12

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

the military at its Washington-based installations and contractors on the water bodies at issue creates a sufficient causal nexus.  The State cannot explain how—assuming Old Monsanto was the sole PCB manufacturer as alleged in the Complaint—the PCBs used on U.S. Navy vessels that are docked, decommissioned, and disassembled in the very water bodies implicated in the Complaint do not create a causal nexus to the manufacturer providing PCBs under color of federal office.  *See* Compl. ¶ 6.  In short, the conduct Old Monsanto performed at the government's direction—manufacturing PCBs for electrical and a variety of other military applications—has a causal relationship to the conduct complained of in the Complaint—contamination resulting from the very PCBs that the government compelled Old Monsanto to manufacture.  *Id.*, Ex. 17.[15]  And Defendants have adduced evidence of direct sales to the Navy, and other federal agencies, and defense contractors within the State of Washington with operations on the water bodies at issue.

Recent Ninth Circuit precedent holds that the Court is to "credit the defendant's theory of the case" in "assessing whether a causal nexus exists."  *Leite*, 749 F.3d at 1124.  The State insists that Defendants must prove, a few months after being sued, that their theory of the case is correct.  But, again, that is not the law.  Removal is proper and a causal nexus may be found even though Defendants "may not be right—indeed, it may be that the Navy had nothing to do with [the challenged conduct].  But the question of 'whether the challenged act was outside the scope of [Defendants'] official duties, or whether it was specifically directed by the federal government is one for federal—not state—courts to answer.'"  *Id.*

---

[15] Even though Old Monsanto was compelled to make sales for uses it had voluntarily ceased, *see* Notice of Removal, Exs. 4 & 17, the State is incorrect in claiming that compulsion is a necessary feature of the relationship between the private contractor and the government.  As the Second Circuit has held: "We find no authority for the suggestion that a voluntary relationship [between the government and the removing defendant] somehow voids the application of the removal statute.  To require the relationship to have been not only 'special' but coerced makes little sense in light of the statute's purpose, and it is particularly strange when applied to natural persons who are acting under a federal officer— all of whom, we would trust, are doing so voluntarily."  *Isaacson*, 517 F.3d at 138.

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 13

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

(quoting *Isaacson*, 517 F.3d at 138; citing *Willingham*, 395 U.S. at 407).[16]

### 3. Defendants Assert Colorable Federal Defenses

"To be 'colorable,' the defense need not be clearly sustainable, as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citing *Willingham*, 395 U.S. at 406–07). "At its core, the defense prong requires that the defendant raise a claim that is 'defensive' and 'based in federal law.'" *Id.* at 138 (citing *Mesa v. California*, 489 U.S. 121, 129–30). Defendants have asserted at least three such defenses here.

#### *The Government Contractor Defense*

Defendants assert the government contractor defense, "which is a creature of federal common law," and is both "'defensive' and 'federal.'" *Isaacson*, 517 F.3d at 139 (quoting *Mesa*, 489 U.S. at 129–30 (internal citation omitted). As the Ninth Circuit held recently, at the removal stage, Defendants do not "have to prove that [their] government contractor defense is in fact meritorious" because, "[a]s the Supreme Court has held, a defendant invoking § 1442(a)(1) 'need not win his case before he can have it removed.'" *Leite*, 749 F.3d at 1124 (quoting *Willingham*, 395 U.S. at 407).

The government contractor defense applies when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Tech. Corp.*, 487

---

[16] Evidence already adduced shows that Old Monsanto manufactured and supplied PCBs at the direction of federal officers when it would not otherwise have done so, satisfying the nexus requirement. As one of the State's authorities establishes, "[i]n the early 1970s, the Monsanto Defendants phased out production of PCBs for all but enclosed electrical uses." *Anderson*, 646 F. Supp. 2d at 1045. As described earlier, in 1972 and 1974 the Department of Commerce directed Old Monsanto to deliver PCBs to military contractors for non-closed purposes, despite the fact that, by then, Old Monsanto had voluntarily ceased manufacturing PCBs due to environmental concerns associated with non-closed PCB uses. Notice of Removal, Exs. 16 & 19.

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 14

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

U.S. 500, 512 (1988).  The State's sole paragraph concerning this defense fails to show that the defense is not colorable as to any of these elements.  *See* Motion, at 15:1–16.

*First*, PCBs that Old Monsanto manufactured for the federal government all had reasonably precise specifications for particular uses by the federal government.  *See, e.g.*, Notice of Removal, Exs. 2–5 (government specifications and correspondence regarding government requiring use of PCBs to meet specifications).  Importantly, to satisfy this element, it is not necessary for the product supplied to be specially designed by the military with no input from the manufacturer.  Indeed, the Ninth Circuit has expressly rejected that very argument.  *See McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 450 (9th Cir. 1983) (rejecting plaintiff's argument that the government contractor defense "is only available where the specifications in the contract leave no discretion to the supplier in the formulation of the product's design").  To the extent proving this defense at trial requires evidence of a back and forth dialog between the government and contractor, *see* Motion at 15:11–15, that showing is not necessary to establish for purposes of removal that the defense is colorable, which is satisfied by Defendants' preliminary showing here.  *See Leite*, 749 F.3d at 1124 (citing *Jefferson Cnty.*, 527 U.S. at 431).[17]

The State contends that a specification for heat-resistant paint that Old Monsanto provided leaves some discretion as to the composition; however, the specification expressly called for Aroclor 1242, a PCB-containing product.  Motion at 8:20–22.  Regardless, the government contractor defense still applies if the specifications leave "some discretion to the

---

[17] The State cites *Cabalce v. Thomas E. Blanchard & Assoc., Inc.*, 797 F.3d 720 (9th Cir. 2015), in noting that the government contractor defense is available only to those who design and manufacture military equipment. Motion at 15:1–3. *Cabalce* is inapposite because there, the defendant was an independent contractor hired by the Treasury Department to store fireworks that had been seized by government. *Cabalce*, 797 F.3d at 723. Fireworks are not military equipment used to help conduct wars. By contrast, Old Monsanto manufactured PCBs for use in military equipment and PCBs were deemed "necessary to the national defense." Moreover, the defendant in *Cabalce* conceded that it was not a military contractor, but claimed it was "plausible that the [government contractor] defense may apply outside of the military context" even though "binding precedent has not reached a similar conclusion." *Id.* at 731, n. 9. *Cabalce* is distinguishable and the State's reliance on it is misplaced.

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 15

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1    supplier in the formulation of the product's design." *McKay*, 704 F.2d at 450.  The State also

2    ignores specifications identified in the U.S. Air Force Armstrong Laboratory's 1994 report

3    entitled, *Risk Assessment of Polychlorinated Biphenyls (PCBs) On-Board Navy Ships*.

4    Notice of Removal, Ex. 23.    That report identifies several military specifications as

5    "[s]ources of potential PCB contamination found on nuclear submarines [] (Puget Sound

6    Naval Shipyard (PSNS), 1994)," including "Ensolite hull insulation (MIL-P-15280)," "Cork

7    hull insulation (MIL-C-561/HH-C-561)," "Armaflex hull insulation (MIL-P-15280)," "Heat

8    resistant and aluminum paste paint (TT-P-28, MIL-P-14276 or DOD-P-24555)," and "Wool

9    felt ventilation gaskets (MIL-G-2024/MIL-STD-2148)."[18]    The State addresses none of

10   these.

11        *Second*, the various PCBs manufactured by Old Monsanto and sold to the federal

12   government or its contractors at its direction met all applicable product specifications and

13   satisfied government-required inspections.[19]  As discussed in the Notice of Removal, Old

14   Monsanto received commendations from the military and the Army-Navy "E" Award based,

15   in part, on satisfaction of government performance standards. *See* Notice of Removal, ¶ 13,

16   Ex. 9.  The State has adduced no evidence that any PCBs Old Monsanto manufactured or

17   supplied did not conform to specification.

18        *Third*, Old Monsanto was not aware of dangers related to PCBs that were not known

19   to the government.  "The third prong does not require contractors to warn the government of

20

---

21   [18] Defendants have shown, based on the limited evidence available without the benefit of
     discovery, that the government approved reasonably precise specifications. *Leite*, 749 F.3d

22   at 1124.  And Defendants have the right to insist in a federal forum that it is not for the State
     to question those specifications with 80 years of hindsight; military equipment design

23   "involves not merely engineering analysis but judgment as to the balancing of many
     technical, military, and even social considerations, including specifically the trade-off

24   between greater safety  and greater combat effectiveness." *Boyle*, 487 U.S. at 511.

25   [19] *See, e.g.*, Notice of Removal, Ex. 3 (sales invoice to Loring Air Force Base (April 16,
     1971), noting certification for national defense under DMS Reg L DOC9E, and contractor

26   responsibility for performing inspections and tests required to substantiate that supplies and
     services provided meet military specifications).

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 16

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

dangers already known to the government." *See In re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 404, 435 (E.D.N.Y. 2004). But, even so, based on evidence adduced at this early stage, Old Monsanto warned the government regarding PCB hazards. *See* Notice of Removal, Ex. 17 (Nov. 17, 1972 correspondence from Old Monsanto to U.S. Dept. of Commerce, warning of environmental concerns and explaining need for care in handling, possession, use, and disposal of PCBs).

The State claims without citation to any authorities that Defendants' government contractor defense is not colorable because Defendants have not shown previous success on it. Motion at 14:22–26. The State badly misunderstands Defendants' burden. To be colorable, Defendants need not show that they have before or will now prevail (*Willingham*, 395 U.S. at 407), for the defense need not be meritorious (*Leite*, 749 F.3d at 1124), nor must Defendants show a likelihood of success on the merits (*In re "Agent Orange,"* 304 F. Supp. 2d at 449). Also, this case is materially different from prior actions involving PCBs because of the State's theories of liability. The State is suing for contamination at the home of the Navy's Pacific Fleet, where ships laden with PCBs ordered by the military have been docked and decommissioned for decades.

The evidence establishes that Defendants have a colorable claim to satisfy each of the three prongs of the government contractor defense and, therefore, are entitled to a federal forum in which to present it. *See Boyle*, 487 U.S. at 512. And the federal forum is crucial because, as Judge Weinstein held, "government contractor cases are freighted with factual findings," and the substantive rule established by *Boyle* "may be readily circumvented by state courts unsympathetic to the defendants. Central to 'Congress' concern [was] local hostility to federal authority.'" *In re "Agent Orange Prod. Liab. Litig.*, 304 F. Supp. 2d at 451 (citing *Mesa*, 489 U.S. at 140 (Brennan, J., concurring)).

### *Defense Production Act*

The Defense Production Act provides that "[n]o person shall be held liable for

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 17

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this chapter, notwithstanding that any such rule, regulation, or order shall thereafter be declared by judicial or other competent authority to be invalid." 21 U.S.C. § 4557.  Here, the State is suing Defendants for Old Monsanto's manufacturing of PCBs, and Defendants have submitted indisputable evidence that PCBs were ordered by federal officers pursuant to the Defense Production Act. Notice of Removal, Exs. 16–19 (Department of Commerce officials ordering Old Monsanto to accept purchase orders "pursuant to Section 101 of the Defense Production Act of 1950"). Thus, Old Monsanto was issued and complied with directives from federal officers under threat of criminal prosecution pursuant to the Defense Production Act to manufacture and supply PCBs.  The State's suit seeks to hold Defendants liable as Old Monsanto's successor for complying with the government's mandates under the Defense Production Act, raising a colorable federal defense under 21 U.S.C. § 4557.

### Express and Implied Preemption

Defendants have another colorable federal defense because the State's claims are preempted by the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2617, which provides a comprehensive regulatory approach to PCBs and other chemicals.  *See, e.g.*, 15 U.S.C. §§ 2601(c), 2605(a), 2605(c)(1)(D).  For PCBs in particular, there was consensus that preexisting uses of PCBs were essential for the safety of the nation's electrical grid to prevent fires and explosions.  *See, e.g.*, 47 Fed. Reg. 37,342, 37,342 (Aug. 25, 1982) ("An immediate ban of [PCBs] would not only have disrupted electric service but would also have caused severe economic hardship for the public and United States industry").

Federal courts considering whether Defendants' express TSCA preemption defense is colorable have held that it is.  *See, e.g., Custer*, 2009 WL 5033931 at *5 ("the Court finds Defendants have presented a colorable federal defense"); *Anderson*, 646 F. Supp. 2d at 1053 (same).  And, in prior cases, court have ruled in favor of defendants on the merits of this

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 18

defense, finding both common law and statutory claims related to PCBs to be preempted by TSCA.[20]   The State spends only a single sentence on this issue in its Motion (15:18–21). The State concedes that TSCA preempts "statutes" (Motion at 15:20), but it fails to explain why its *statutory* causes of action for public nuisance (RCW 7.48), product liability causes of action (RCW 7.72), and statutory trespass claim (RCW 4.24.630) do not fit the bill.  Those statutes at a minimum raise a colorable federal defense under TSCA preemption.  And the State does not explain why the 1977 effective date of TSCA precludes preemption here, where the State alleges (whether erroneously or not) that Old Monsanto manufactured PCBs until 1979. Compl. ¶ 3.

Defendants also have a further colorable defense that the State's claims are preempted by the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA).  The State seeks to recover "natural resource damages"— damages expressly available under CERCLA (but not under any causes of action asserted by the State) against appropriate parties.  CERCLA empowers "natural resource trustees," such as a state, under a comprehensive and reticulated scheme by which liable parties are identified and the specific restoration-focused damages are apportioned among them.  Thus, to the extent the Complaint purports to rest on state law, the suit frustrates the objectives and purposes of CERCLA by seeking to evade and undermine the comprehensive, detailed statutory scheme that Congress created to determine and allocate responsibility for natural resource restoration costs among multiple parties.  The CERCLA "savings" clause that the

---

[20] *See, e.g., Rollins Env. Svcs. v. St. James Parish*, 775 F.2d 627 (5th Cir. 1985) (TSCA preempted local ordinance that functionally prohibited disposal of PCBs); *Twitty v. North Carolina*, 527 F. Supp. 878 (E.D.N.C. 1981) (nuisance and violation of ordinance claims preempted by TSCA). *Warren County v. State of N.C.*, 528 F. Supp. 276 (D. N.C. 1981); *TCI, Inc. v. Town of Ghent*, 165 A.D.2d 307 (N.Y.A.D. 1991); *Enviro. Transp. Sys. Inc. v. ENSCO, Inc.*, 736 F. Supp. 384 (C.D. Ill. 1991).  Circuit courts have found that alone is enough to find the defense is colorable. *See City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 391 (6th Cir. 2007) ("[W]here the federal defense . . . had previously found success in other circuits, one would be hard pressed to say that the defense was not colorable").

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

State cites as its sole response to this argument does not mean that CERCLA has no preemptive effect; it is well-settled that, notwithstanding that clause, State laws and claims that frustrate CERCLA's purposes and statutory scheme are preempted.[21]

Defendants also assert that the State's claims are barred by principles of conflict preemption. Specifically, the State claims that Washington State laws imposed a contemporaneous duty on Old Monsanto prior to 1979 not to manufacture PCBs, but that conflicts with federal directives requiring the manufacture of PCBs under the Defense Production Act, federal government orders and purchases, and statutes permitting the continued use of PCBs, *e.g.*, 15 U.S.C. § 2605(e)(2)(A). The Washington law that the State says imposed a duty to stop commercial manufacturing of PCBs, therefore, stands as an obstacle to the accomplishment of federal objectives, and the State's claims are barred by principles of conflict preemption.[22]

### B.   The State Pleads a Federal CERCLA Natural Resources Damages Claim

The State's Complaint raises a federal question under 28 U.S.C. § 1331 because it alleges "Monsanto's PCBs have caused and will continue to cause direct injury to Washington's public natural resources," Compl. ¶8, and it seeks "[d]amages for injury to natural resources, including the economic impact to the State and residents." Prayer for Relief No. 2. This is on its face a claim that arises under CERCLA, notwithstanding the State's attempt to disguise that fact by excising any mention of the statute in its Complaint.

---

[21] *See Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928, 943 (9th Cir. 2002) (CERCLA preemption will be found where "state law stands as 'an obstacle to the accomplishment and execution of [CERCLA's] full purposes and objectives'") (quoting *Calif. Fed. Sav. And Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987)).

[22] A state "requirement" may take the form of a common law suit for damages. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992). *See also Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (federal law is supreme and overrides state law where state law stands as an obstacle to the accomplishment of objectives of Congress); *FDA v. Brown & Williams Tobacco Corp.*, 529 U.S. 120 (2000) (where Congress gives express sanction to an activity, the states cannot declare that activity tortious).

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 20

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1    The State devotes less than a page to this issue, and it misses the point.  The question

2    is not whether CERCLA includes a savings provision (it does).  The question is whether,

3    notwithstanding the titles that the State ascribes to its causes of action to avoid pleading a

4    CERCLA claim, the Complaint raises a federal question because the State repeatedly seeks

5    "natural resource damages"— a creature of federal law and CERCLA specifically.[23]

6        Here, CERCLA is the federal regulatory scheme under which the State may pursue

7    from appropriate parties "damages for injury to, destruction of, or loss of natural resources,

8    including the reasonable costs of assessing such injury, destruction, or loss[.]"  42 U.S.C. §

9    9607(a)(4)(C).  CERCLA expressly provides for a claim that is made against appropriate

10   parties by a "State act[ing] on behalf of the public as trustee of such natural resources [i.e.,

11   natural resources within the State] to recover such damages."[24]  42 U.S.C. § 9607(f)(1).  That

12   is what the State is doing here.  The eight cities litigating in federal court do not assert a

13   claim for natural resource damages because they are not empowered to seek natural resource

14   damages like states are under CERCLA.

15       The State expressly seeks to recover natural resource damages as the trustee of the

16   State's natural resources more than 25 times in the Complaint, and none of the enumerated

17   ---

18   [23] As explained in the Notice of Removal, under the well-pleaded complaint rule, that the
     State denominates its claims in state law terms does not end the inquiry.  The State ignores

19   that"[t]he [federal question] doctrine captures the commonsense notion that a federal court
     ought to be able to hear claims recognized under state law that nonetheless turn on

20   substantial questions of federal law, and thus justify resort to the experience, solicitude, and
     hope of uniformity that a federal forum offers on federal issues . . . ."  *Grable & Sons Metal*

21   *Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  And "the artful pleading
     doctrine creates an exception" to the well-pleaded complaint rule, and it "exists where a

22   plaintiff articulates an inherently federal claim in state-law terms."  *Brennan v. Sw. Airlines*
     *Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998), *amended sub nom. Brennan v. Sw. Airlines*, 140
     F.3d 849 (9th Cir. 1998).

23   [24] The wisdom of CERCLA's collective approach gathering all stakeholders is obvious here,

24   where the State purports to be acting on behalf of the public to address contamination at the
     same sites (e.g., Duwamish River) where the City of Seattle has claimed it is suing

25   Defendants for the benefit of the State.  *See City of Seattle v. Monsanto Co., et al.*, Case No.
     2-16-cv-107-RSL, Dkt. 60 at 8:7–9 ("Seattle argues that its claims are not subject to the

26   applicable limitations periods because Washington law exempts local governments . . . when
     they bring suit for the benefit of the state").

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 21

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

state-law claims recognizes or authorizes such damages—therefore, a "natural resource claim" under CERCLA is an element (and a substantial, essential one) of plaintiff's causes of action. *See* Compl. ¶¶ 3, 7, 8, 9, 10, 12, 14, 15, 16, 17, 18, 20, 31, 87, 90, 91, 97, 98, 99, 107, 116, 117, 131, 139, 140, 141; 42 U.S.C. § 9607(a)(4)(C); 42 U.S.C. § 9607(f)(1); *Gully*, 299 U.S. at 112.

Despite the State's purposeful avoidance of the acronym "CERCLA," the Complaint can be read as invoking CERCLA on its face because only CERCLA provides the basis for the natural resource damages recovery that the Complaint makes clear is the focal point of the lawsuit. Section 107(f)(1) of CERCLA expressly provides for the State to sue "on behalf of the public as trustee" for the "natural resources within the State" to "recover for . . . damages" to "such natural resources," and the Complaint reads like a carbon copy of Section 107(f)(1), except for the omission of quotation marks and appropriate citations to CERCLA.[25]

By contrast, *none* of the State's six enumerated state law claims for public nuisance, product liability (defective design and failure to warn), negligence, equitable indemnity, or trespass recognizes or authorizes recovery for "damages" to "natural resources."[26] Because natural resources damages are absent from these purported state law causes of action and are instead an essential element of CERCLA, the Complaint raises a federal question under a statute subject to exclusive federal jurisdiction.

---

[25] There are numerous examples of CERCLA actions which involve both PCBs and water bodies the State lists in the Complaint as being contaminated with PCBs, further evidencing that CERCLA should govern here. *See, e.g.*, Exs. 1–3 (CERCLA Complaints in *U.S. v. Boeing Co.*; *U.S. v. Advance Ross Sub. Co.*; *Pakootas v. Teck Cominco Metals*).

[26] *See* Wash. Rev. Code § 7.48.130 (public nuisance statute; no mention of natural resources damages); Wash. Rev. Code § 7.72.030 (product liability statute; no mention of natural resources damages); *Degel v. Majestic Mobile Manor, Inc.*, 914 P.2d 728, 731 (Wash. 1996) (citing elements of common law negligence; no mention of natural resources damages); *Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 285 P.3d 70, 81 (Wash. Ct. App. 2012) (discussing elements of equitable indemnity; no mention of natural resources damages); Wash. Rev. Code § 4.24.630(1) (statutory trespass statute; no mention of natural resources damages).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

C.    **The Complaint Invokes Federal Enclave Jurisdiction**

The Complaint alleges that over 120 specific water bodies and "others" throughout Washington are contaminated with PCBs manufactured exclusively by Old Monsanto. Compl. ¶ 6(a).  Many of those water bodies, including several on or adjacent to federal enclaves, were contaminated as a result of activities on the enclaves.  Thus, this Court has jurisdiction under 28 U.S.C. § 1331 and article I, section 8, clause 17 of the U.S. Constitution[27] because actions that arise on federal enclaves necessarily present questions of federal law.[28]

The State attempts to downplay PCB contamination on or arising from operations at federal enclaves.  Without citation to actual PCB levels, the State speculates that for water bodies at issue that lie both within and outside of enclaves, PCB contamination is more pronounced "outside" the enclaves' federal jurisdiction.[29]   The State's convenient speculation—which is mere guesswork—should be disregarded.  But even more important, even if accurate, the State fails to explain why, even if the alleged PCB contamination were "less pronounced" on federal enclaves would divest this Court of jurisdiction over contamination on those enclaves as pled in the State's Complaint—and the Court has supplemental jurisdiction over claims arising outside of federal enclaves in any event.  28 U.S.C. § 1367.

Moreover, the State cannot reasonably dispute that the alleged PCB contamination in

---

[27] A federal enclave results when a state transfers its territory to the United States through cession or consent, thus granting the federal government exclusive jurisdiction.  To be considered a federal enclave, the federal government must have purchased a territory "by the Consent of the Legislature of the State."  *See* U.S. Const. art. I, § 8, cl. 17.

[28] "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'"  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006).

[29] *See* Motion, at 17–18 ("while the headwaters of the Cowlitz River lie within Mount Rainier National Park, the main Cowlitz River—and the entirety of the portion affected by Monsanto PCBs—extends for approximately 105 miles outside the park," and "ten miles of the 45-mile Elwha River—again, the portion of the river most affected by PCBs—lie outside the boundaries of Olympic National Park.").

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 23

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

the waters surrounding the Puget Sound Naval Shipyard ("PSNS"), a federal enclave in Bremerton, Washington (*Murray v. Joe Gerrick & Co.*, 291 U.S. 315, 316–17 (1934)), arose due to military activity on the federal enclave, again providing support for removal on the basis of federal enclave jurisdiction.

## IV.     Conclusion

Old Monsanto was acting under the color of federal officers and agencies in conducting the production activities prior to 1979 for which the State of Washington now seeks to hold its alleged successors liable. Defendants properly removed this case under 28 U.S.C. § 1442 and assert colorable federal defenses, which they are entitled to present in a federal forum. In addition, the Complaint seeks natural resource damages under CERCLA, and alleges contamination arising on federal enclaves, both of which raise federal questions, provide the Court jurisdiction under 28 U.S.C. § 1331, and permit removal under 28 U.S.C. § 1441. The motion to remand should be denied.

Dated this 6th day of March, 2017.

SCHWABE, WILLIAMSON & WYATT, P.C.

By:     /s/ Jennifer L. Campbell
Jennifer L. Campbell, WSBA #31703
jcampbell@schwabe.com
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010

KING & SPALDING LLP

Donald F. Zimmer, Jr.,
fzimmer@kslaw.com ,
Nicholas D. Kayhan,
nkayhan@kslaw.com
Cameron J. Hoyler,
choyler@kslaw.com
*Pro Hac Vices forthcoming*
101 Second Street, Suite 2300
San Francisco, CA 94105
*Attorneys for Monsanto Company,*
*Solutia, Inc., and Pharmacia LLC*

OPPOSITION TO MOTION TO REMAND
CASE NO. 2:17-CV-53-RSL - 24

1

## CERTIFICATE OF SERVICE

2      The undersigned declares under penalty of perjury, under the laws of the State of

3   Washington, that the following is true and correct:

4      That on the 6th day of March, 2017, I arranged for service of the foregoing

5   OPPOSITION TO MOTION TO REMAND to the parties via the Court's CM/ECF system

6   as follows:

7

| **ROBERT W. FERGUSON** | **GOMEZ TRIAL ATTORNEYS** |
|---|---|
| Attorney General of Washington | John P. Fiske (CA SBN 249256) |
| William R. Sherman, WSBA #29365 | (*Pro Hac Vice*) |
| bill.sherman@atg.wa.gov | jfiske@gomeztrialattorneys.com |
| Counsel for Environmental Protection | |
| 800 Fifth Avenue, Suite 2000, TB-14 | **BARON & BUDD, P.C.** |
| Seattle, WA 98104-3188 | Scott Summy (*Pro Hac Vice*) |
| Phone: 206.464.6130 | (Texas Bar No. 19507500) |
| | ssummy@baronbudd.com |
| **ROBERT W. FERGUSON** | Carla Burke Pickrel (*Pro Hac Vice*) |
| Attorney General of Washington | (Texas Bar No. 24012490) |
| Jonathan C. Thompson, WSBA #26375 | cburke@baronbudd.com |
| jonat@atg.wa.gov | Celeste Evangelisti (CA SBN 225232) |
| Ecology Division | (*Pro Hac Vice*) |
| 2425 Bristol Court S.W. | cevangelisti@baronbudd.com |
| P.O. Box 40117 | |
| Olympia, WA 98504-0117 | *Attorneys for Plaintiff* |
| | |
| *Attorneys for Plaintiff* | |

19   by:

20   ☐  U.S. Postal Service, ordinary first class mail
     ☐  U.S. Postal Service, certified or registered mail,
21      return receipt requested
     ☐  hand delivery
22   ☐  facsimile
     ☒  electronic service
23   ☐  other (specify) _____

24

25                                          /s/ Jennifer L. Campbell
                                            Jennifer L. Campbell, WSBA #31703
26

CERTIFICATE OF SERVICE - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
U.S. Bank Centre
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone 206-622-1711